UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSEPH MANN, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-2618 |
| | § | |
| THE BANK OF NEW YORK MELLON, *et al*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

Pending before the Court in the above referenced cause, removed from state court on diversity jurisdiction, is Defendants Bank of America and Bank of New York Mellon's Motion to Dismiss (Doc. 4). Having considered Defendants' Motion, the allegations of this case, and the applicable law, the Court concludes that Defendants' Motion to Dismiss should be GRANTED.

## I.     Background and Procedural History

On August 6, 2012, Joseph Mann and Melissa J. Mann ("the Manns") brought this case in state court, seeking a temporary restraining order and a temporary injunction preventing Defendants from foreclosing upon their home during the pendency of this case. The Manns asserted claims of: (1) breach of contract, (2) violations of the Texas Debt Collections Act, (3) waiver and quasi estoppel, and (4) declaratory judgment. Doc. 1 Plaintiff's Original Petition at 11-16. [1]

In support of their claims, the Manns allege that they, along with Mrs. Mann's parents, Jorge Joaquin and Thelma Joaquin ("the Joaquins"), obtained a mortgage in March 2006 through

---

[1]  The Manns, in their Response to Defendants' Motion to Dismiss (Doc. 6), make it clear that they are not asserting a claim for derogatory credit reporting.

Bank of America (BAC) for the house located at 2411 Crossmill Lane, Katy, Texas. *Id*. at 3.  A Deed of Trust was executed by the Manns and the Joaquins.  *Id*.  For a time, the Manns and the Joaquins all lived in the home, but the Manns later moved out, leaving the mortgage obligations with the Joaquins.  In 2009, Mr. Joaquin passed away.  At the time of his death, the mortgage was in default.  The Manns allege that they moved back into the Crossmill home and learned that mortgage payments had not been made based on instructions from BAC to the Joaquins that they should not "make a payment for three months because they would not be eligible for any assistance until the note was delinquent at least 90 days."  Petition at 4.

The Manns allege that they attempted to cure the default on the mortgage by seeking a modification.  Following several attempts, BAC approved a Trial Payment Plan ("TPP") and sent Mrs. Joaquin notice of such.  Mrs. Joaquin signed the TPP paperwork in Mr. Mann's name and returned it.  Mr. Mann alleges that he had no knowledge of Mrs. Joaquin's actions and no knowledge that she had obligated him to make payments in accord with a TPP.   As such, no TPP payments were made.  BAC later rejected the Manns' "HAMP application for failing to pay the TPP."  The Manns allege that they advised BAC of the errors in the prior paperwork, reported the forgery on the prior TPP documents to BAC's fraud department, and re-applied for a loan modification.  That subsequent request for a loan modification was denied.  The Manns ultimately allege that BAC:

> once again in the Winter-Spring of 2012 offered HAMP consideration as an option to cure the default. However, for at least the fifth time, BAC said it could not proceed without removing Jorge Joaquin from the title; and for at least the fifth time Mr. Mann faxed BAC a copy of the death certificate. Finally, BAC confirmed in July, 2012 that Mr. Joaquin had been removed from the title and it could proceed with the Manns' HAMP application to cure the default. However, inexplicably, BAC at the same time posted the property for foreclosure sale August 9, 2012. Since BAC had never given the Manns full opportunity to cure the default, there should be no acceleration and certainly no foreclosure. When Mr. Mann reached out to BAC to inquire as to why it had posted the home for

foreclosure, he was told that it may be postponed, but he needed to check back-
which he did again and again, but with no definitive answer. Unfortunately, the
Manns and their children cannot wait until after foreclosure day to discover
BAC's true intentions.

Petition at 11.

Defendants timely removed the state court action to this court on the basis of diversity, and promptly filed a Motion To Dismiss.  In that Motion to Dismiss, Defendants argue that the Manns have failed to state a claim against them for which relief may be granted and that the Manns' claims are therefore subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

## II.   <u>Standard of Review</u>

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . " *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964–65 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965, *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235–236 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). *"Twombly* jettisoned the minimum notice pleading requirement of *Conley v. Gibson*, 355 U.S. 41 . . . (1957) ["a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"], and instead required that a complaint allege enough facts to state a claim that is plausible on its face." *St. Germain v. Howard*, 556 F.3d 261, 263 n. 2 (5th Cir. 2009), *citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) ("To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim

to relief that is plausible on its face.'"), *citing Twombly*, 127 S. Ct. at 1974).

In *Ashcroft v. Iqbal*, 129 S. Ct. at 1940, the Supreme Court, opined that Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" under Rule 12(b). *Iqbal*, 129 S. Ct. at 1949. The plaintiff must plead specific facts, not merely conclusory allegations, to avoid dismissal. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief . . ." *Rios v. City of Del Rio, Texas*, 444 F.3d 417, 421 (5th Cir. 2006), *cert. denied*, 549 U.S. 825 (2006).

## III.   Discussion

### A.   Breach of Contract

The Manns' breach of contract claim is based on Bank of America's failure to provide them with a meaningful opportunity to cure the default on the mortgage, as is required by the Deed of Trust.  In support of their breach of contract claim, the Manns allege as follows:

> 21. **The Contract**. Defendant BAC, as an agent for BNYM, maintained a contractual relationship with Plaintiffs through the promissory note and Security Instrument (deed of trust) it held. When Plaintiffs defaulted and were unable to pay, BAC was required by the terms of the Security Instrument to send a Notice of Default listing the specific actions to be taken to cure the default. Although nothing in the contract required it do so, BAC chose to offer the HAMP as one action the Manns could take to cure the default. Alternatively, in the event the Manns did not qualify for the HAMP, BAC offered consideration of a proprietary modification as well as the Home Affordable Foreclosure Alternatives such [as] a short sale or deed in lieu of foreclosure. The Manns took BAC up on its offer and fully performed all the actions required of them to apply for the HAMP. Specifically, this included contacting BAC, requesting the paperwork, completing the same and returning it to BAC (several times, as it turned out).

> 22. **The Breach**. The Security Instrument requires that the lender provide: 1) notice of default, 2) specific actions Borrowers can take to cure the default and to 3) give Borrowers at least 30 days to complete those actions. BAC provided specific actions for Plaintiffs to take to cure the default under the HAMP and

under its own modification programs. Even though Plaintiffs followed the specific requirements to cure the default, (i.e. called and requested a modification packet and timely filled out and returned the requested paperwork), BAC failed to allow the Manns the opportunity to comply with the action as required by the deed of trust. Specifically, BAC did not communicate notices timely, did not properly verify information, and did not follow the "right party contact" protocol in sending out the TPP notice to Mr. Mann. Due to BAC's handling of the option that it chose to offer, it has taken a year and it still has not finished consideration of the Manns' modification to cure the default. The deed of trust requires that the lender give the borrower as much time as it takes to take advantage of the action or actions it offers to cure the default. BAC has not allowed the Manns to take advantage of the modification default curing option and has instead accelerated the loan and posted the home for foreclosure. BAC's actions, therefore, specifically violate the terms of the deed of trust.

23. **Damages.** As a proximate result of BAC's actions, Plaintiffs have been damaged in that they have been penalized with incorrect and derogatory credit reporting, and have lost the opportunity to earn the incentive money offered to borrowers under HAMP, HAFA, and other proprietary modification programs and are now forced to find a new place to live with their four children, which will certainly be more expensive because of BAC's incorrect credit reporting.

Petition at 11-13.

To state a claim for breach of contract under Texas law, a plaintiff must allege "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *American General Life Ins. Co. v. Kirsch*, 378 Fed. App'x 379, 383 (5th Cir. 2010); see also *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W. 3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.).   Defendants seek dismissal of the breach of contract claim on the basis that a party to a contract who is in default cannot maintain a suit for breach of contract.  *Gulf Pipe Line Co. v. Nearen*, 138 S.W.2d 1065, 1068 (Tex. 1940) ("It is also elementary that a party to a contract who is himself in default cannot maintain a suit for its breach").  The Manns, in response, while admitting that they were in default, argue that Defendants were required by the terms of the Deed of Trust to give them a opportunity to cure the default.

Here, the Manns' own allegations defeat their breach of contract claim.  The Manns

admit that they were offered a TPP, that the TPP documents were forged by Mrs. Joaquin, and that no TPP payments were made.  The Manns further allege that they, on multiple and successive occasions, filed paperwork seeking a loan modification, which they did not receive. As the Manns were, by their own allegations, given the opportunity to seek a loan modification as a way to cure the default, an opportunity that spanned well over a year before Bank of America set the property for foreclosure in August 2012, the Manns have not stated a viable claim for breach of contract.  As for the Manns' other breach of contract allegations, premised on Bank of America's failure to provide them with *all* available alternatives to foreclosure prior to pursuing foreclosure, such a claim is not "plausible" on its face. As acknowledged by the Manns in their response to the Motion to Dismiss, *see* Response (Document No. 6) at 4, they cannot maintain a private cause of action based on HAMP or Bank of America's non-compliance with HAMP. *See Nolasco v. CitiMortgage, Inc*., Civil Action No. H-12-1875, 2012 WL 3648414, at *4 (S.D. Tex. Aug. 23, 2012) (Miller, J.); *Cade v. BAC Home Loans Servicing, LP*, Civil Action No. H-10-4224, 2011 WL 2470733, at *3 n. 3 (S.D. Tex. June 20, 2011) (Miller, J.).  Moreover, BAC was not required, by either the terms of the Deed of Trust, or any provision of Texas law, to provide the Manns with the opportunity to pursue a *full* range of alternatives to foreclosure. *Brooks v. Ocwen Loan Servicing, LLC*, Civil Action No. H-12-1410, 2012 WL 3069937, at *6 (S.D. Tex. July 27, 2012) (Lake, J.).

The Manns, based on their own allegations, have failed to state a breach of contract claim for which relief may be granted and that claim is subject to dismissal under Rule 12(b)(6).

### B.     Texas Debt Collection Act

The Manns' claim for violations of the Texas Debt Collection Act, Tex. Fin. Code § 392.001, *et seq.*, is based on Defendants' alleged threats of foreclosure, Defendants' failure to

provide them with all options to cure the default, and Defendants' refusal to consider and then

approve them for a modification following Mrs. Joaquin's forgery of Mr. Mann's name on the

TPP paperwork. The Manns allege in this regard as follows:

> 24. BAC is a "debt collector" within the meaning of Tex. Fin. Code §
> 392.001 (6) because it engages in the collection of consumer debts, i.e. an
> obligation primarily for personal, family, or household use. Moreover BAC
> placed the notice "This is an attempt to collect a debt. Any information will be
> used for that purpose" on all their correspondence with Plaintiffs. Further, such
> disclosure is also played as part of a "pre-recorded" introduction whenever a
> borrower calls the designated consumer phone line.

> 25. Subchapter D of section 392 of the Finance Code, entitled "Prohibited
> Debt Collections Methods" provides a laundry list of actions that a debt collector
> may not take in debt collection. Specifically, Tex. Fin. Code § 392.301, entitled
> "Threats or Coercion" prohibits BAC from "threatening to take an action
> prohibited by law." Tex. Fin. Code subsection (a)(8). BAC violated subsection
> (a)(8) when it threatened to take action to foreclose on the Property prior to
> complying with the requirements under Paragraph 22 of the Security Instrument.

> 26. Additionally, BAC is prohibited from using fraudulent, deceptive or
> misleading representations in the collection of Plaintiffs' debt. Tex. Fin. Code §
> 392.304. Specifically, BAC represented various options that the Manns could take
> to cure their default with no intention of allowing them to take such action. This is
> plainly seen in the fact that BAC refused to re-review the modification paperwork
> and they denied the Manns the opportunity to consider foreclosure alternatives
> prior to accelerating the note and proceeding with foreclosure.

Petition at pp. 13-14.

Under § 392.301(a)(8) of the Texas Finance Code: "In debt collection, a debt collector

may not use threats, coercion, or attempts to coerce" that involve "threatening to take an action

prohibited by law." In addition § 392.304(a)(8) prohibits a debt collector from "misrepresenting

the character, extent, or amount of consumer debt" and §392.304(a)(19) prohibits the use of "any

other false representations or deceptive means to collect a debt or obtain information concerning

a consumer."

The Manns allege that (1) BAC threatened to take action to foreclose on the property prior to complying with the requirements under the security instrument, and (2) represented various options to cure the default, but did not allow them to pursue those options and instead sought to foreclose on the property.  The Manns' claim under § 392.301(a)(8) of the Texas Finance Code fails.  As set forth above, BAC met the requirements under the Deed of Trust by giving the Manns notice of default for non-payment and an opportunity to cure the default.   This is all that was required.  *See* Deed of Trust (Doc. 4-2) ¶ 22; *see also Wildy v. Wells Fargo Bank, N.A.*, Civil Action No. 3:12-CV-01831-BF, 2013 WL 246860, at *5 (N.D. Tex. Jan. 21, 2013) ("foreclosure, or the threat of foreclosure, is not an action prohibited by law when a plaintiff has defaulted on their mortgage loan").

Furthermore, "[t]he TDCA does not prevent a debt collector from 'exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings.'" *McAllister v. BAC Home Loans Servicing, LP*, No. 4:10-CV-504, 2011 WL 2200672, at *8 (E.D. Tex. Apr. 28, 2011); *Sweet v. Wachovia Bank & Trust Co.*, No. 3:03-CV-1212R, 2004 WL 1238180, at *3 (N.D> Tex. Feb. 26, 2004).  *See also Broyles v. Chase Finance*,   CIV. A. No. 3:10-CV-2256-G, 2011 WL 1428904, at *3 (N.D. Tex. Apr. 13, 2011) ("rejecting TDCA claim in non-judicial foreclosure because Finance Code expressly allows a debt collector to threaten to exercise or exercise a contractual or statutory remedy."), *citing* Tex. Fin. Code Ann. § 392.201(b)(3); *Voth v. Fed. Nat'l Mortg. Ass'n*, No. 3-10-CV-2116-G-BD, 2011 WL 1897759, at *4 (N.D. Tex. Apr. 22, 2011) ("Because BAC had a statutory right to foreclose on plaintiff's property and exercised that right in a procedurally correct manner, there is no violation of the TDCA or the DTPA."), report and recommendation adopted, 2011 WL 1897271 (N.D. Tex. May 18, 2011) (*citing Boyles*).

The Manns also allege that BAC was deceptive and misleading when it assured them that they would have an opportunity to cure the default even after the forgery incident.  Tto be actionable under the Texas Debt Collection Act as a misrepresentation of "the character, extent or amount of a consumer debt statement," TEX. FIN. CODE § 392.304(a)(8), however, the statement complained of has to be false or misleading. *Bellaish v. Chase Home Finance, LLC*, Civil Action No. H-10-2791, 2011 WL 4902958, at *2 (S.D. Tex. 2011) (Atlas, J.). The Manns have not alleged that any statement made by BAC was false or misleading. While the Manns do allege that BAC failed to re-review the modification paperwork, BAC correctly notes that it gave the Manns an opportunity to cure with the TPP and had no legal obligation to anything else.

Because BAC gave the Plaintiffs an opportunity to cure, and had no obligation to offer or provide any further remedies, Plaintiffs cannot, with the allegations contained in their state court pleading, state a claim under the Texas Debt Collection Act.  This claim is also subject to dismissal under Rule 12(b)(6).

### C.    Defenses to Acceleration and Sale

In a claim entitled "Defenses to Acceleration and Sale," the Manns allege that they, under the terms of the Deed of Trust, can challenge the acceleration of the note and any proposed foreclosure by filing suit and asserting defenses "to acceleration and sale."  The Manns assert "waiver" and "quasi-estoppel" as defenses:

> 28. **Waiver**. In pleading this defense, Plaintiffs allege that BAC (and by extension of agency, BNYM) has intentionally relinquished its right to accelerate the loan and sell the Property under a power of sale. Waiver of a right can be established expressly or by a party's conduct (i.e. when a party's conduct is inconsistent with an intent to claim a right). Once a contract is breached, the non-breaching party may waive their claim to breach by either 1) showing a conscious intent to do so or 2) by acting to induce the defendant's detrimental reliance, thereby creating an estoppel situation.

> 29. Prior to the foreclosure, BAC offered consideration of a HAMP modification as an action available to cure the default. In so doing, BAC made specific

statements about specific options that were available to Plaintiffs such as the HAMP, and the other alternatives available in its written policies and procedures. In offering these alternatives, BAC, through conscious intent and action, waived its right to proceed with foreclosure until it properly considered Plaintiffs for modification under each of the available foreclosure prevention and alternative options.

30. **Quasi-Estoppel**. Alternatively, Plaintiffs assert a claim under the Defense to Acceleration and Foreclosure clause in paragraph 22 of the Security Instrument, of quasi-estoppel. Also known as "Estoppel by Conduct" this cause of action prohibits Defendants from asserting a right, to the disadvantage of Plaintiffs that is inconsistent with a position previously taken by Defendants. As the holder of the Security Instrument, BNYM, through its servicer BAC could enforce it by its terms in the event of Plaintiffs' default. However, BNYM and BAC chose not to enforce it by its terms, but instead chose to participate in the MHA program as well as provide property foreclosure mitigation and alternative options. This position provides both BNYM and BAC with a benefit in that both companies recognize that curing a default through a modification or allowing a borrower to deed the property in lieu of foreclosure is more productive and less expensive than foreclosing. As such, the first two elements of quasi-estoppel: acquiescence and a benefit, are satisfied.

31. BAC then decided to ignore the deed of trust when it failed to consider Mr. Mann's requests for the available and offered foreclosure relief options. This position is completely inconsistent with its offer to consider Plaintiffs under these programs to cure the default on the loan. Defendants' actions were in direct contravention of the foreclosure prevention alternatives espoused in their correspondence and on their websites. This inconsistent position satisfies the third element of quasi estoppel.

32. Finally, it would be unconscionable to permit BAC and BNYM to maintain this present position to the disadvantage of Plaintiffs. The Manns took Defendants at their word believing they would properly consider them for the foreclosure prevention and alternative programs described herein. Plaintiffs relied upon their representations to save their home. Allowing BAC and BNYM to ignore their obligations towards the Manns is unconscionable.

Petition at 14-15.

Both claims or defenses to acceleration, which are based on the same underlying allegations that BAC failed to afford them all opportunities and methods for curing the default, fail. In addition, both claims fails because they are asserted as *defenses* and there are no claims alleged by Defendants in this case, much less any claims to which such defenses would apply.

*See Brooks*, 2012 WL at *6 ("Because Brooks' waiver and quasi-estoppel allegations are defenses to claims that Ocwen has not pleaded, they are not properly before the court and will therefore be dismissed.").

Under Texas law, "[w]aiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right." *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008).  Quasi-estoppel, in contrast, is available when "it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit." *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000). "Thus, quasi-estoppel forbids a party from accepting the benefits of a transaction and then subsequently taking an inconsistent position to avoid corresponding obligations or effects." *Lindley v. McKnight*, 349 S.W.3d 113, 131 (Tex. App.—Fort Worth 2011, no pet.).

Here, the Manns allege that BAC, by offering modification options, waived its right to proceed with foreclosure until "it properly considered Plaintiffs for modification . . ." Petition at 14.  The Manns' own allegations, however, defeat their waiver claim. The Manns allege that they *were* considered for a loan modification, but that their request was denied on at least two occasions. Moreover, the terms of the Deed of Trust provides that "any forebearance by Lender in exercising any right or remedy . . . shall not be a waiver of or preclude the exercise of any right or remedy." Doc. 4-1.   Such a non-waiver provision in a Deed of Trust is generally sufficient, in and of itself, to defeat a homeowner's claim of waiver.  *Watson v. Citimortgage, Inc.*, ___ Fed. Appx. ___, No. 12-41009, 2013 WL 2468035, at *3 (5th Cir. 2013).  The Manns, with their allegations, and the unambiguous non-waiver term in the Deed of Trust, have failed to state a waiver claim for which relief may be granted.

With respect to the quasi-estoppel claim, such a claim is precluded by the Manns' allegations as to their unclean hands. "[A] party seeking an equitable remedy must do equity and come to court with clean hands." *Truly v. Austin,* 744 S.W.2d 934, 938 (Tex.1988)). Here as Defendants point out, and as the Manns do not contest, Mrs. Joaquin forged Mr. Mann's name on the TPP paperwork. That forgery by Mrs. Joaquin, whether it was within the control of the Manns or not, precludes the equitable relief sought by the Plaintiffs with their quasi-estoppel defense.

Both the waiver and the quasi-estoppel defenses are dismissed for failure to state a claim.

### D.      Declaratory Judgment and Injunctive Relief

The Manns have asserted a claim for a declaratory judgment. In addition, the Manns seek injunctive relief. In the absence of a viable, substantive claim, neither declaratory nor injunctive relief is available.

A declaratory judgment claim cannot stand alone; instead, the "Texas Uniform Declaratory Judgments Act, TEX.CIV.PRAC. & REM.CODE Ann. § 37.001 et seq. (Vernon 1986), is merely a procedural device; it does not create any substantive rights or causes of action." *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.* 99 F.3d 746, 752 n. 3 (5th Cir. 1996). Where all the substantive, underlying claims have been dismissed, a claim for declaratory judgment cannot survive. *Ayers v. Aurora Loan Services, L.L.C.*, 787 F.Supp.2d 451, 457 (E.D. Tex. 2011) (dismissing claim for declaratory judgment where all underlying substantive claims had been dismissed); *Valdez v. Federal Home Loan Mortgage Corp.*, 2011 WL 7068386, at *3 (N.D. Tex. 2011) (where Plaintiff failed to state a claim for trespass to try title and to quiet title, Plaintiffs' claims for declaratory and injunctive relief were also subject to dismissal under Rule 12(b)(6)); *James v. Wells Fargo Bank, N.A.*, 2012 WL 778510, at *4 (N.D. Tex. 2012)

(dismissing claim for declaratory relief where the "arguments for declaratory relief are unsupported by the facts alleged"). Similarly, under Texas law, "[i]njunctive relief is simply a form of equitable remedy." *Cook v. Wells Fargo Bank, N.A.*, 2010 WL 2772445, at *4 (N.D. Tex. 2010) (*citing Brown v. Ke-Ping Xie*, 260 S.W.3d 118, 122 (Tex. App. 2008). To sustain a claim for injunctive relief, a plaintiff must first plead a viable underlying cause of action. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002).

Here, given that Plaintiffs' substantive claims-for breach of contract, for violations of the Texas Debt Collection Act, waiver and quasi-estoppel are all subject to dismissal under Rule 12(b)(6), the Manns' claim for declaratory and injunctive relief must be dismissed as well.


## IV.   **Conclusion**

Based on the foregoing, and the conclusion that Plaintiffs have not stated any claim related to the foreclosure proceedings for which relief may be granted, it is

ORDERED that Defendants Bank of America and Bank of New York's Motion to Dismiss Plaintiffs Joseph and Melissa Mann's original state court petition (Doc. 4) is **GRANTED** and Plaintiffs' claims, as set forth in their original state court petition, are **DISMISSED**.

SIGNED at Houston, Texas, this 16th day of September, 2013.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE